## McALLISTER et al. v. SLOAN.*

### No. 10305.

Circuit Court of Appeals, Eighth Circuit.
Feb. 13, 1936.

Harry Campbell, of Tulsa, Okl. (A. J. Biddison, V. Biddison, and Harry Campbell, Jr., all of Tulsa, Okl., on the brief), for appellants.

*Rehearing denied March 23, 1936.

M. A. Breckinridge, of Tulsa, Okl. (Vincent M. Miles, Fred S. Armstrong, and Robert A. Young, Jr., all of Fort Smith, Ark., on the brief), for appellee.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

This was an action at law brought by Mr. and Mrs. McAllister against J. W. Sloan to recover damages to land alleged to have been caused by the building, by the defendant, of a dam in the Illinois river, a nonnavigable stream which runs from Arkansas into Oklahoma.

In substance, the complaint alleged that the McAllisters owned land on the banks of the stream, which they used as a summer camp for girls and which was valuable and desirable for that purpose, having a fine beach upon a natural pool of clear water suitable for boating, bathing, and other water sports; that they had spent large sums of money improving their land and the adjacent river bank; that the defendant Sloan built a dam in the river below their land, raised the water seven feet above its natural level, flooded the bathing beach and a portion of the land, and made the land and the river unsightly, unattractive, and unfit for the purposes for which the land was used and useful; that the defendant had never obtained a permit to build the dam from any court; that the land was worth $35,000 before it was flooded, and $5,000 after it was flooded. They prayed for double damages.

The defendant first moved, unsuccessfully, to make the complaint more definite and certain and to strike portions of it. He then demurred. His demurrer was overruled. He then answered, denying all of the allegations of the complaint, and alleging that the dam was built by the Illinois Water Development Company, an Oklahoma corporation, upon lands in Oklahoma, pursuant to a permit from the Oklahoma Conservation Commission, and that his only participation in the project was as an officer of that company.

After the answer was filed, the plaintiffs asked leave to file an amended complaint omitting the allegation that Sloan had no permit from any court and asserting that in 1926 he had caused the incorporation of the Illinois Water Development Company with a capital stock of $1,000, 98 per cent. of which was issued to Sloan; that during 1930, when the dam was built, that company was insolvent; that Sloan, acting either for himself or as president of the company, had full charge and control of the building of the dam. The court refused leave to file the amended complaint.

The case was called for trial. Mrs. McAllister having died, the administrator of her estate was substituted for her. A jury was impaneled. Counsel for the plaintiffs made his opening statement. In substance, he stated to the jury that he would prove the same facts which were alleged in the complaint. He made no reference, however, to the lack of a permit from any court to erect the dam, and said that he would show that the dam was built on land in Oklahoma, the title to which was in the name of the Illinois Water Development Company; and that J. W. Sloan owned virtually the entire capital stock of that company, and was its president and in full control of it; that he supervised the building of the dam and actively participated in building it. Upon the completion of this opening statement, the defendant moved the court "for a directed verdict on the allegations of the petition and the opening statement of counsel." The court announced that counsel for the plaintiffs had failed "to state a state of facts which the court thinks would entitle him to recover under his complaint," and directed a verdict for the defendant, upon which the judgment appealed from was entered.

The plaintiffs assign as error (1) the refusal by the court of leave to file the amended complaint; (2) the granting of the motion for a directed verdict.

The federal statute covering amendments to pleadings (U.S.C., tit. 28, § 777; 28 U.S.C.A. § 777) is liberally construed. Woodard v. Outland (C.C.A.8) 37 F.(2d) 87, 89. The practice of the federal courts is to permit amendments in all judicial proceedings where they are necessary to enable parties to reach the merits of the controversy they attempt to present, and where the allowance of the amendments will work no injustice. In re Plymouth Cordage Co. et al. (C.C.A.) 135 F. 1000, 1003; Woodard v. Outland, supra, 37 F. (2d) 87, 89. Amendments to pleadings are freely allowed where they are in furtherance of justice. The propriety of such amendments is a matter of discretion with the trial court, and its determination will not be disturbed unless it appears that its discretion has been unwisely exercised and that its action was not, under the circum-

stances, in furtherance of, but a detriment to, justice. Schulenberg v. Norton (C.C. A.8) 49 F.(2d) 578, 579. Amendments may be made at any time while the court has jurisdiction, even after judgment; and upon appeal the appellate court may regard a pleading as having been amended to conform to the proof. Schulenberg v. Norton, supra, 49 F.(2d) 578, at page 579. An amendment which makes no change in the facts relied upon for recovery, but which merely alters the remedy or result of the facts alleged, states no different cause of action and is proper. Schulenberg v. Norton, supra, 49 F.(2d) 578, at page 579; Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355; New York Central & Hudson River R. Co. v. Kinney, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294; Manhattan Oil Co. et al. v. Mosby (C.C.A.8) 72 F.(2d) 840, 843.

Apparently the court below, in denying leave to amend and in disposing of the case upon the trial, proceeded upon the theory that the plaintiffs were seeking to depart from the cause of action stated in the complaint and to set up and prove a different, distinct, and inconsistent cause of action. Since they alleged the lack of the permit to build a dam and asked for double damages, it is claimed that they had declared under the mill dam statutes of Arkansas (Crawford & Moses' Dig.1921, §§ 3943–3967)—which give the right to build dams in nonnavigable streams with permission from county courts, but make the person building such a dam liable for double damages if he has no permit—and that they could not, under their complaint, treat their cause of action as one arising in tort under the common law. When it appeared from the opening statement of counsel that the dam was built in Oklahoma, and it then became apparent to the court below that no recovery could be had, under the statutes of the state of Arkansas relating to dams built in the streams of that state, the court directed a verdict for the defendant.

It is obvious that, unless the plaintiffs at the trial were offering to prove a different cause of action than that alleged in their complaint, the motion of the defendant for a directed verdict should have been denied.

While it is apparent that the plaintiffs, in drawing their complaint, originally had in mind that the mill dam statutes of Arkansas applied to their situation, it is equally apparent that they stated sufficient facts to make out a cause of action at common law for damages for the flooding of their lands. The defendant was fully apprised of the factual basis of their claim. The allegations of the complaint were not, in our opinion, inconsistent with the facts stated in the opening statement. The opening statement amplified what was asserted in the complaint. It was only the remedy or result of the facts alleged as originally conceived that the plaintiffs were departing from. There are several cases in the Supreme Court which clearly demonstrate that neither the amendment proposed nor the opening statement constituted a departure from the cause of action stated in the complaint.

In Missouri, Kansas & Texas Ry. Co. v. Wulf, supra, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, a mother, as sole heir, commenced a suit, under the Kansas statute, to recover damages for the death of her son. Two years after the injury, and after the statute of limitations had run, she amended her complaint and sued both as sole heir and as administratrix, and relied both on the Kansas law and the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–59). She obtained a judgment under the federal act, which was sustained by the Supreme Court, although, because the suit was brought by her originally in her personal capacity and in terms based upon the Kansas law, it could not originally have been attributed to the federal act. The court said (226 U.S. 570, at page 576, 33 S.Ct. 135, 137, 57 L.Ed. 355): "Nor do we think it [the amendment] was equivalent to the commencement of a new action, so as to render it subject to the two years' limitation prescribed by section 6 of the Federal Employers' Liability Act [45 U.S. C.A. § 56]. The change was in form rather than in substance. Stewart v. Baltimore & Ohio Railroad Co., 168 U.S. 445, 18 S.Ct. 105, 42 L.Ed. 537. It introduced no new or different cause of action, nor did it set up any different state of facts as the ground of action, and therefore it related back to the beginning of the suit."

In New York Central & Hudson River R. Co. v. Kinney, supra, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294, the original complaint set forth facts which would have given a cause of action at common law, under the statutes of New York or the Federal Employers' Liability Act, as one or another law might govern. It alleged a

notice required by the New York statute, indicating that it was drawn upon the theory that that statute applied. Some seven and a half years after the action was begun, an amended complaint was filed, which alleged that the plaintiff and the defendant were engaged in interstate commerce, but which retained the allegation as to the notice required by the state statute. It was contended that the amendment introduced a new cause of action which was barred by limitations. The trial court held that the complaint warranted a recovery under either law, as the jury should find. The Supreme Court, in affirming a judgment for the plaintiff and holding that no new cause of action was stated, said (260 U.S. 340, at page 346, 43 S.Ct. 122, 123, 67 L.Ed. 294): "Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied."

In Seaboard Air Line Railway v. Koennecke, 239 U.S. 352, 353, 36 S.Ct. 126, 60 L.Ed. 324, the original complaint was clearly based upon the statute of South Carolina relating to death by wrongful act, because exemplary damages were prayed for. Upon the trial, the plaintiff asked leave to amend so as to bring the case under the Federal Employers' Liability Act. The amendment was allowed, and the plaintiff had judgment. The court said (239 U.S. 352, at page 354, 36 S.Ct. 126, 127, 60 L. Ed. 324): "The cause of action arose under a different law by the amendment, but the facts constituting the tort were the same whichever law gave them that effect."

See, also, Seaboard Air Line Railway v. Renn, 241 U.S. 290, 293, 36 S.Ct. 567, 60 L.Ed. 1006; St. Louis, S. F. & T. Ry. Co. v. Smith, 243 U.S. 630, 37 S.Ct. 477, 61 L. Ed. 938, affirming St. Louis, S. F. & T. Ry. Co. v. Smith (Tex.Civ.App.) 171 S.W. 512; Manhattan Oil Co. et al. v. Mosby (C.C. A.8), supra, 72 F.(2d) 840, 843.

The case at bar is not one where the plaintiffs failed to state enough facts; the claim is that they stated one fact too many (lack of a permit), and asked for double damages, and hence must lose their case. The gist of their complaint was the flooding of their land. Whether it was done by a dam rightfully built or wrongfully built

is of little consequence. Whether they are to receive damages or mere compensation for their loss is not important. Compensation is the fundamental principle of damages. Miller v. Robertson, 266 U.S. 243, 257, 45 S.Ct. 73, 69 L.Ed. 265. We think that it is a situation where the defendant has had notice from the beginning that the plaintiffs set up and were trying to enforce a claim against him because of specified conduct, and we believe a liberal rule should apply.

We do not hold that the court below erred in denying leave to amend. The allegation as to lack of a permit may be regarded as surplusage. Evidence as to the extent and nature of the defendant's participation in the building of the dam can be received under the complaint as it stands. A trial court has discretion to amend the pleadings upon the trial to conform to the proof if that is necessary. H. F. Wilcox Oil & Gas Co. v. Skidmore (C.C.A.8) 72 F.(2d) 748, 752.

It was error to grant the motion for a directed verdict. Whether a verdict could ever be directed upon the opening statement of counsel on the ground that the cause of action stated differed from that alleged in the complaint, we need not determine. The practice is certainly unusual. If no opening statement had been made, and if counsel for the plaintiffs had attempted to introduce evidence which was inadmissible because not within the issues, and which was ruled out on that ground, and thus had failed to prove his case, the penalty would have been that imposed by the practice of Arkansas for failure of a plaintiff to establish a cause of action— whether a dismissal without prejudice or one with prejudice, we do not now stop to inquire.

In Hanna et al. v. Brictson Mfg. Co. et al. (C.C.A.8) 62 F.(2d) 139, 144, this court said: "It is the duty of the courts to dispose of controversies after trial and upon their merits whenever possible. The modern tendency of both the bench and the bar is to brush aside technicalities and to bring about a disposition of suits, not upon some technical rule of pleading and practice incomprehensible to the lay mind, but upon the evidence and in accordance with the law."

In Bedford v. J. Henry Miller, Inc., 212 F. 368, 370, the Circuit Court of Appeals of the Fourth Circuit said: "When a party gets his cause of action, or his defense, or

his appeal, before a court of competent jurisdiction, he should not be turned out before trial of the merits of the controversy, except in obedience to a clear statutory mandate, or on a showing of gross carelessness or bad faith. The absolute dismissal of a plea or an appeal, for error in a matter of mere procedure, is in reality the infliction of the severest penalty for a minor fault, and is suggestive of the excessive punishments formerly inflicted for minor offenses in the administration of the criminal law. Conformity to rules of procedure is important, but usually it may be secured by imposing as a condition of amendment the payment of costs or other penalty, short of dismissal, on the party or his counsel, as circumstances may require, for negligence or inadvertence." See, also, Nash v. Towne, 5 Wall. 689, 698, 18 L.Ed. 527; Washington & Georgetown R. Co. v. Hickey, 166 U.S. 521, 531, 532, 17 S.Ct. 661, 41 L.Ed. 1101; Berger v. United States, 295 U.S. 78, 83, 55 S.Ct. 629, 79 L.Ed. 1314.

The judgment is reversed, and the case remanded, with directions to grant the plaintiffs a new trial.