**HARDWARE MUTUAL INSURANCE COMPANY OF MINNESOTA and Hardware Dealers Mutual Fire Insurance Company, Plaintiffs-Appellants,**

**v.**

**C. A. SNYDER, Inc., a Pennsylvania Corporation, Defendant.**

**HARDWARE MUTUAL INSURANCE COMPANY OF MINNESOTA and Hardware Dealers Mutual Fire Insurance Company, Plaintiffs-Appellees,**

**v.**

**C. A. SNYDER, Inc., a Pennsylvania, Corporation, Defendant-Appellant.**
**Nos. 11974, 11975.**

United States Court of Appeals Third Circuit.

Argued Nov. 9, 1956.

Decided Feb. 25, 1957.

Daniel B. Winters, Pittsburgh, Pa., (Arthur G. Stein, Brenlove, Fisher, Stein & Winters, Pittsburgh, Pa., on the brief), for Hardware Mutual and others.

Lee C. McCandless, Butler, Pa., for C. A. Snyder, Inc.

Before MARIS and KALODNER, Circuit Judges, and WORTENDYKE, District Judge.

KALODNER, Circuit Judge.

These are appeals from an order and judgment of the District Court of the Western District of Pennsylvania in an action by the plaintiffs seeking recovery from the defendant for damages to certain buildings at 229 and 231 West Jefferson Street, Butler, Pennsylvania. Defendant appealed from judgment for the plaintiffs with respect to the property at 231. Plaintiffs cross-appealed from the order against them as to the property at 229.

The facts may be summarized as follows:

One Harry O. Weeter owned the two properties above mentioned. Hardware Mutual Insurance Company of Minnesota and Hardware Dealers Mutual Fire Insurance Company, plaintiffs, issued policies of fire insurance to Weeter covering the two buildings. Weeter leased the property at 229 to the defendant, C. A. Snyder, Inc., ("lessee") a corporation engaged in the business of selling, servicing and repairing automobiles.

On December 12, 1951, while an employee of lessee was repairing an automobile at 229 a fire occurred resulting in destruction of the buildings at 229 and 231. In accordance with the terms of the insurance policies the plaintiffs paid Weeter for the damage to the two properties and as subrogees brought action against lessee alleging negligence on its part. In defense lessee asserted a provision in its lease with Weeter which provided:

"Any damage to building, fixtures, water or gas pipes, during the term of this lease to be paid by lessee on demand; and on expiration of this lease, the property is to be surrendered in as good order as it now is, reasonable wear and tear, and *accident by fire alone excepted*, without further notice from said lessor." (Emphasis supplied.)

As to 229 West Jefferson Street:

Lessee's motion for judgment on the pleadings was sustained as to the leased premises at 229 West Jefferson Street on the ground that the word "accident" as used in the lease "must be construed to include loss by fire though it occur-

red through the negligence of the defendant."[1]

■ The plaintiffs contend that the provision in the lease does not relieve the lessee from liability for negligence. Plaintiffs rely upon the well-settled rule in Pennsylvania[2] that a waiver of responsibility for negligence must be expressed in clear and precise language. Cannon v. Bresch, 1932, 307 Pa. 31, 160 A. 595; Wright v. Sterling Land Co., 1945, 157 Pa.Super. 625, 43 A.2d 614; Lerner v. Heicklen, 1926, 89 Pa.Super. 234. The reason for this requirement is that in the ordinary course of contracting to establish a particular legal relationship a party does not normally waive the responsibility of the other party for his negligence with respect to property involved in the contract. It is also clear that a lease must be construed most strongly against a lessor and in a light most favorable to the lessee. McClintock & Irvine Co. v. Aetna Explosives Co., 1918, 260 Pa. 191, 103 A. 622. So viewing the law of Pennsylvania, the question is whether the phrase, "accident by fire alone excepted", constitutes a clear and precise waiver of the lessee's responsibility for a negligently caused fire.

The Pennsylvania cases involving the relief of a party to a landlord-tenant relationship from liability for negligent acts have considered the landlord aspect of the relationship.

In Cannon v. Bresch, supra [307 Pa. 31, 160 A. 596], a landlord was held not liable to a tenant for negligently-caused water damage due to the terms of the lease which relieved the landlord "from all liability for any and all damage caused by water." In Wright v. Sterling Land Co., supra [157 Pa.Super. 625, 43 A.2d 615], the tenant's automobile was stolen from a garage in the landlord's custody. The landlord was not liable under a lease which provided that "the lessor shall not be liable for any injury or damage from any cause whatever." Where a lease provided "nor shall the lessor(s) be held responsible for loss of property however occurring", the landlord was not liable to a tenant for negligently-caused water damage. Lerner v. Heicklen, supra.[3]

The intent to relieve the landlord from liability for his negligence was recognized by the Pennsylvania courts in the above cases. We think the intent to relieve the tenant from liability for negligently-caused fire damage would similarly be recognized in this case, especially since the lease must be viewed in a light most favorable to the lessee.

■ That "accident by fire alone excepted" expresses the intention to waive the lessee's responsibility for fire damage resulting from the lessee's negligence is, of course, dependent upon whether the word "accident" includes negligence. True, " 'Accident,' is difficult to define; it is not a technical legal term with a clearly defined meaning." 1 C.J.S., Accident, p. 425 (1936). The Pennsylvania courts have recognized, however, that the popular conception of "accident" includes negligence. "Accident, and its synonyms casualty and misfortune, may proceed or result from negligence, or other cause known, or unknown." McCarty v. New York and Erie

1. Hardware Mutual Insurance Company of Minnesota v. C. A. Snyder, Inc., D.C. W.D.Pa.1956, 137 F.Supp. 812.

2. Since the alleged tort underlying the suit took place in Pennsylvania, the law of that state applies. Restatement, Conflicts of Law, Secs. 377, 378 (1934). Lessee's defense is based upon a lease to Pennsylvania realty so that the lease must be interpreted in accordance with Pennsylvania law. Id. Sec. 214.

3. In Darrow v. Keystone, 5, 10, 25, $1.00

Stores, Inc., 1950, 365 Pa. 123, 74 A.2d 176, 177, the landlord was not relieved from liability for damage caused by a fire resulting from his negligence where the lease provided "the lessee expressly agrees to assume all liability of accident or damage due to said occupancy." The Court relied upon the "due to said occupancy" part of the provision stating that the damage was not the result of the lessee's occupancy. The Court did not consider whether "accident" embraced negligence.

**68**

Railroad Co., 1858, 30 Pa. 247, 251. In Hamilton v. American Indemnity Co., 1923, 82 Pa.Super. 191, 194–195, the Court said:

"Some authorities hold that the word 'accidental' means the happening of an event without fault or negligence on the part of anyone. This is a narrow and restricted meaning. In its ordinary, popular sense, it expresses the thought of an event occurring without design or purpose, or unintentionally on the part of the assured. Given the latter meaning, it does not negative the idea of negligence on the part of the one whose physical act the occurrence follows." [4]

See also Springfield Township v. Indemnity Insurance Company of North America, 1949, 361 Pa. 461, 463, 64 A.2d 761; Goldenberg v. Equitable Life Assurance Society of the United States, 1934, 113 Pa.Super. 414, 173 A. 445.

"Accident" is a word of broad scope and includes many unfortunate occurrences not anticipated in the ordinary course of affairs. The wilful act is not embraced by the word, but the negligently-caused happening is understood to be an "accident". This is the popular denotation of "accident", and use of the word in the lease is precise enough language to relieve the defendant-lessee from liability for its negligently-caused fire.

As to 231 West Jefferson Street:

Lessee's motion for judgment on the pleadings was denied with respect to the property at 231 West Jefferson Street. In denying lessee's motion, the Court reasoned that "[t]he lease cannot be extended to protect the lessee for damage done to adjacent property if the fire was caused by his negligence." [5] A non-jury trial was held upon plaintiffs' action with respect to 231 and resulted in judgment being entered for them.

Lessee here contends: (1) the lease relieves it from liability for damage done to property adjoining the leased premises and owned by the lessor; (2) the evidence fails to support a finding of negligence on its part; and (3) plaintiffs failed to prove any damages.

In urging that the lease relieves it from liability for damage done to 231, lessee stresses a unity in construction and operation of the buildings at 229 and 231. The fact that the buildings were a unit and the parties could contemplate that if one burned, the other would burn, does not affect lessee's responsibility under the terms of the lease. As we observed with reference to lessee's liability as to 229, a waiver of responsibility for negligence must be expressed in clear and precise language. The lease involved relates to premises 229 and does not attempt to state the rights and obligations of the parties with respect to any other property. No reference is made to the building at 231 so that the lease cannot be extended to relieve lessee from liability for damage done to that property.

Lessee next urges that the plaintiffs failed to sustain their burden of proof in showing that lessee was negligent.

The incident involved occurred on December 12, 1951. On that day an employee of lessee, after road testing an automobile, decided that the trouble lay in the fuel line. He jacked-up the rear end of the automobile, disconnected the fuel line from the rear of the gasoline tank, and proceeded to the front of the automobile and disconnected the fuel line

---

4. This broad meaning of "accident" has been recognized outside of Pennsylvania. "[Accident] in its more general sense does not exclude human fault, termed as negligence * * *, but is recognized as an occurrence arising from the carelessness of men, and the fact that the negligence of the person injured contributed to produce the result will not make it any less an accident." Paulissen v. Jonas, 1941, 311 Ill.App. 346, 35 N.E.2d 958, 959. See also Honeycutt v. Louis Pizitz Dry Goods Co., 1938, 235 Ala. 507, 180 So. 91; American Indemnity Co. v. Jamison, Tex.Civ.App.1933, 62 S.W.2d 197, 198; Vennen v. New Dells Lumber Co., 1915, 161 Wis. 370, 154 N.W. 640, L.R.A. 1916A, 273.

5. See Note 2 supra.

at the carburetor. He then applied compressed air to blow out the line. At this same time the custodian of the automobile was underneath holding his left hand with a rag in it up to the end of the fuel line at the rear of the automobile. Upon the first application of air pressure to the fuel line by the mechanic, gasoline flowed along the fuel line and dripped out. Since the mechanic had left a hot lighted electric trouble-light near the end of the fuel line, the gasoline was ignited and the resulting conflagration destroyed the buildings at 229 and 231.

While the District Court found that the manner employed in cleaning out the fuel line was the customary method, it also found that leaving a hot lighted bulb near the fuel line was not in accordance with usual practice and that the application of air pressure caused the gasoline to be expelled onto the hot light bulb resulting in the fire. Such conduct was found to be careless and dangerous.

■ A high degree of care is demanded of those handling or working about an inflammable substance such as gasoline. Konchar v. Cebular, 1939, 333 Pa. 499, 3 A.2d 913; Fredericks v. Atlantic Refining Co., 1925, 282 Pa. 8, 127 A. 615, 38 A.L.R. 666. The lessee was found to have breached this duty. Competent witnesses testified that the hot bulb had been left underneath the car near the fuel line, and that cold gasoline striking a hot bulb could cause a fire. The inference that the fire arose from this combination of circumstances is a reasonable one. While the lessee offered evidence contrary to the facts found, the findings of the District Judge cannot be said to be clearly erroneous. Fed.R.Civ. P. rule 52(a), 28 U.S.C.

■ Lessee also assigns as error the failure of the District Judge to allow its offer of evidence showing personal loss to it and its employees for the purpose of raising an inference or presumption of due care. While evidence of personal loss may be relevant where an intentional tort is involved,[6] such evidence does not bear on the issue of whether a certain method of repair was performed in a negligent fashion. This is especially true here where a high degree of care was required on the part of the lessee and its employees.

■ Lessee objects to certain opinion testimony which was admitted into evidence. There appears to be sufficient competent evidence in the record to support the District Court's findings. There is nothing to indicate that it premised such findings on the evidence complained of. Judgment in a non-jury case will not be reversed where there is sufficient competent evidence to support the verdict and nothing in the record indicates that the District Court relied on the incompetent evidence in making its findings. McComb v. McCormack, 5 Cir., 1947, 159 F.2d 219; Thompson v. Carley, 8 Cir., 1944, 140 F.2d 656.

■ Finally lessee urges that plaintiffs merely adduced in evidence the amounts paid to Weeter under the insurance policies and that such proof was insufficient to establish actual damages. This issue was neither raised by lessee during the trial nor in its motion for verdict and judgment. That being so, the question will not now be considered on appeal. Hazeltine Research, Inc., v. Avco Manufacturing Corp., 7 Cir., 1955, 227 F.2d 137, certiorari denied 1956, 350 U.S. 987, 76 S.Ct. 474, 100 L.Ed. 854; Albers Milling Co. v. Farmers Produce Co., 8 Cir., 1955, 222 F.2d 915.

For the reasons stated the Order and Judgment of the District Court will be affirmed.

6. See Slocum v. Natural Products Co., 1935, 292 Mass. 455, 198 N.E. 747.